IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZEP INC.,

    Plaintiff

v.

    Civil Action: 2:08-cv-1085
    JUDGE GREGORY L. FROST
    Magistrate Judge Mark R. Abel

MIDWEST MOTOR SUPPLY CO.,
d/b/a KIMBALL MIDWEST, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Midwest Motor Supply Co. ("Kimball Midwest"), Inc.'s Motion for Relief from this Court's Order of December 19, 2008 ("Kimball Midwest's Motion for Clarification") (Doc. # 32), the Motion for Sanctions by Plaintiff Zep Inc. ("Plaintiff" or "Zep") (Doc. # 45), and Kimball Midwest's Motion for a Hearing on Zep's Motion for Sanctions (Doc. # 61). For the reasons that follow, the Court **DENIES** all three motions.

### I. Background

On November 14, 2008, Plaintiff filed this action against Kimball Midwest and five individually named defendants. Plaintiff alleges various claims for relief related to the individually named defendants' alleged violations of their restrictive covenants with Zep and Kimball Midwest's alleged interference with the relationships between Zep and the individually named defendants. (Doc. # 2.) On December 3, 2008, Plaintiff amended its complaint to assert claims against three more individually named defendants. (Doc. # 19.)

Counsel for Kimball Midwest, W. Irl Reasoner, III, informed Plaintiff's counsel of

Kimball Midwest's intent to file a motion to sever the individually named defendants' claims and transfer them to district courts in the various individuals' states of residence. Mr. Reasoner explained to Plaintiff's counsel that this Court had previously ruled in Kimball Midwest's favor on the exact issue of transfer that the instant case presented. Specifically, Mr. Reasoner pointed Plaintiff to *Barnes Group, Inc. v. Midwest Motor Supply Co., Inc.*, No. 2:07-cv-1164, 2008 WL 509193 (S. D. Ohio Feb. 22, 2008) ("*Barnes Group Decision*"), in which this Court held that, based upon the employment contracts at issue in that case, the claims for relief against the individually named defendants were properly transferred to district courts in the various individual defendants' states of residence. Mr. Reasoner indicated that the employment contracts upon which this Court relied in the *Barnes Group Decision* were the same as those at issue in the instant action. Plaintiff requested the employment agreements between Kimball Midwest and the individually named defendants and was provided contracts that were identical to those relied upon in the *Barnes Group Decision*. Thus, Plaintiff now explains that, to prevent unnecessary delay and a waste of the Court's and the parties' time, Plaintiff agreed to join in a consent motion to transfer its claims for relief filed against the individually named defendants to district courts in these defendants' states of residence. The consent motion was filed on December 17, 2008. (Doc. # 21.)

As a result of the consent motion, this Court issued the parties' proposed order which caused the following to be transferred ("the Transferred Cases"):

> 1. The related claims against Kimball Midwest, Steven Lave, and Samuel Trantham were transferred to the United States District Court for the Western District of North Carolina, Asheville Division.
>
> 2. The related claims against Kimball Midwest and John Kupec were transferred to the United States District Court for the Eastern District of North Carolina,

Western Division.

3. The related claims against Kimball Midwest and Joe Spigner were transferred to the United States District Court for the District of South Carolina, Spartanburg Division.

4. The related claims against Defendants Kimball Midwest and Kevin Roberson were transferred to the United States District Court for the District of South Carolina, Charleston Division.

5. The related claims against Kimball Midwest and Larry Scott Martin were transferred to the United States District Court for the Western District of Texas, Austin Division.

6. The related claims against Kimball Midwest and John Thomas Belk were transferred to the United States District Court for the Western District of North Carolina, Charlotte Division.

On March 16, 2009, Kimball Midwest filed Kimball Midwest's Motion for Clarification (Doc. # 32) and on March 18, 2009, Plaintiff filed its opposition to that motion (Doc. # 35). On April 9, 2009, Kimball Midwest filed its reply in support of its clarification motion. (Doc. # 39.)

On April 27, 2009, Plaintiff filed the Motion for Sanctions by Zep and its memorandum in support of that motion. (Doc. # 45.) On May 21, 2009, Kimball Midwest filed its response in opposition to the Motion for Sanctions by Zep (Doc. # 53) and on June 4, 2009, Plaintiff filed its reply in support of its motion (Doc. # 57).

## II. Motion for Sanctions

The parties agree that there are employment agreements at issue in the instant action that contain the same language this Court interpreted in the *Barnes Group Decision*. However, in the instant action the individually named defendants were parties to an additional employment agreement titled "Applicant Agreements." In the Motion for Sanctions by Zep, Plaintiff argues that Kimball Midwest, through its counsel Mr. Reasoner, intentionally made false

3

misrepresentations to Plaintiff's counsel regarding the existence of the Applicant Agreements. Plaintiff contends that the Applicant Agreements provide a consent to *in personum* jurisdiction and to the venue of this Court by the individually named defendants. Consequently, Plaintiff asserts that had it known of the existence of the Applicant Agreements it would not have agreed to transfer the Transferred Cases.

Kimball Midwest argues that Mr. Reasoner did not make any false or misleading statements about the Applicant Agreements because he was unaware of their existence until after Plaintiff consented to transfer the Transferred Cases. Further, Kimball Midwest argues that the Applicant Agreements should not alter this Court's approval of the transfer of the Transferred Cases because the Agreements do not constitute a consent by the individually named defendants to the jurisdiction and venue of this Court.

**A. Standard**

Plaintiff seeks sanctions under 28 U.S.C. § 1927 and pursuant to this Court's inherent authority. Sections 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Section 1927 sanctions are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). The purpose is to deter dilatory litigation practices and to punish aggressive tactics that

far exceed zealous advocacy. *See id.* (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230-31 (6th Cir. 1986)). A sanctioned attorney is thus required to personally satisfy the excess costs attributable to his misconduct. *See id.* (citing *In re Ruben*, 825 F.2d at 983).

"Furthermore, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980), held that federal courts have the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith." *Id.*

## B. Analysis

The issues before the Court are whether the Applicant Agreements provide a consent by the individually named defendants to the jurisdiction and venue of this Court and whether Kimball Midwest should be sanctioned for not providing Plaintiff with these contracts before Plaintiff consented to transfer the Transferred Cases.

### 1. Applicant Agreements

The following language is found in the Applicant Agreements:

(3) <u>Applicant understands that employment by, or association with, Kimball Midwest would be conditioned upon continued compliance with any enforceable agreement with a former employer to which Applicant remains legally bound. Applicant understands that . . . sales may not be made on behalf of Kimball Midwest by Applicant within those former territories to any applicable accounts.</u>

(4) If hired by Kimball Midwest[,] Applicant agrees to indemnify and hold Kimball Midwest harmless from any damage or liabilities which Kimball Midwest may sustain as a result of a breach by Applicant of any representation or covenant in this Applicant Agreement.

(5) If hired by Kimball Midwest, Applicant consents to be joined in any action to enforce the terms of this Agreement in any jurisdiction in which Kimball Midwest is sued relating to the alleged breach by Applicant of any covenant or agreement with a former employer.

(Doc. # 45-8) (emphasis in original).

The Court concludes that this language unequivocally shows that the individually named defendants consented to *in personum* jurisdiction and to the venue of any court in which Kimball Midwest is sued by the former employer of one of the individually named defendants.

Personal jurisdiction is a waivable right. *Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citation omitted). The use of a forum selection clause, for example, is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court. *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). Forum selection "clauses are *prima facie* valid absent a showing that they are unreasonable, unjust, or invalid for such reasons as fraud or overreaching." *Tieman v. Victaulic Co.*, No. 06-CV-1036, 2007 WL 397054, 2007 U.S. Dist. LEXIS 7036, at *7 (S. D. Ohio Jan. 31, 2007) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) and *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991)). Further, a forum selection clause is entitled to "substantial consideration." *Id.* at *7-8.

Here, paragraph (3) requires each individually named defendant to continue in compliance with any enforceable agreement made with a previous employer. Paragraphs (4) and (5) of the Applicant Agreement constitute forum selection clauses. By that language, the individually named defendants each consented to personal jurisdiction and to the venue of any court in which Kimball Midwest is sued by one of the individually named defendant's former employers for that individual's alleged violation of a contract between that individual and that former employer. These are the circumstances before this Court. That is, Plaintiff here argues that the individually named defendants are in violation of enforceable non-compete agreements each signed with Plaintiff when they were employed by Plaintiff. The Applicant Agreement

provides that the individually named defendant employee will indemnify and hold Kimball Midwest harmless from "any damage or liabilities which Kimball Midwest may sustain" as a result of an individually named defendant breaching his restrictive covenant with Plaintiff and likewise, to be joined in any jurisdiction where Kimball Midwest is sued related to a breach of the employees' non-compete agreement with his former employer.

Moreover, venue is proper in this Court under 28 U.S.C. § 1392(a)(2), in that Kimball Midwest has reserved this right to recover and clearly contemplates recovering in this Court its damages paid as a result of this litigation. *See also Parentau v. Century Bank*, No. 2:07-CV-851, 2008 WL 281626, 2008 U.S. Dist. LEXIS 11280, at *3-8 (S. D. Ohio Jan. 31, 2008) (instructive analysis of diversity action venue); *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) (Section 1391(a)(2) was intended to broaden the former law governing venue in diversity cases). "The fact that a majority of the acts, events or omissions giving rise to the claim occurred in some other district does not disqualify the district in which the action was filed so long as a substantial part of the acts, events or omissions giving rise to the claim also occurred in the district of filing." *Id.* at *4-5.

Based upon the foregoing, the Court concludes that it may properly exercise *in personum* jurisdiction over the individually named defendants and also that venue is proper in this Court. Thus, the Applicant Agreements are dispositive as to the issue of the propriety of Plaintiff's consent to transfer the Transferred Cases.

   **2. Sanctions**

Plaintiff argues that counsel for Kimball Midwest, Mr. Reasoner, intentionally withheld the Applicant Agreements for the purpose of obtaining Plaintiff's consent to transfer the

7

Transferred Cases. However, Mr. Reasoner has submitted affidavit testimony that he was unaware of the existence of the Applicant Agreements until after Plaintiff agreed to the transfer of those cases and the Court so ordered. This Court accepts Mr. Reasoner's testimony and concludes that he did not act in bad faith.

That being said, the Court finds that, although unintentional, Kimball Midwest did mislead Plaintiff into believing that the transfer issue in this action was the same issue that this Court decided in the *Banes Group Decision*, which is not the case. When Plaintiff requested any employment contracts between Kimball Midwest and the individually named defendants, Kimball Midwest should have produced the Applicant Agreements. However, the costs incurred by Plaintiff related to the Transferred Cases could have been mitigated if Plaintiff would have realized that the Applicant Agreements had been produced to it in January 2009. Based upon these facts, the Court **DENIES** the Motion for Sanctions by Zep as it relates to Plaintiff's request for monetary sanctions. (Doc. # 45.)

Plaintiff, however, also request that this Court return this action to its December 2008 pre-transfer posture. This Court does not possess the power to grant Plaintiff's request. That is, once the Transferred Cases were appropriately transferred to the transferee court, this Court lost jurisdiction to retransfer them back to this Court. *See* 15 C. Wright et al., Federal Practice and Procedure § 3846 at 69-70 (3d ed. 2008) ("When a motion for transfer . . . has been granted, and the papers lodged with the clerk of the transferee court, it is well settled that the transferor court . . . loses all jurisdiction over the case and may not proceed further with regard to it."). However, a transferee court may, in some jurisdictions, retransfer the Transferred Cases back to this Court. *See Russell v. IU Int'l Corp.*, 685 F. Supp. 172, 175-76 (N.D. Ill. 1988) (citing *In re Cragar*

*Industries, Inc.*, 706 F.2d 503, 505 (5th Cir. 1983)). If a transferee court concludes that "the original purposes of the transfer have been frustrated by an unforeseen later event," that court may permit retransfer under 28 U.S.C. 1404(a). *See id.* (citation omitted). *See also* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (3d ed.) § 3846 at 77-78 (1986) ("A motion to retransfer is perfectly appropriate, however, on a showing of changed circumstances").

Based on the circumstances before it, the Court finds that it is appropriate to allow Plaintiff to withdraw its consent to transfer the Transferred Cases (Doc. # ), which necessitates the vacation of this Court's Order transferring those cases (Doc. # 21). Accordingly, the Court **VACATES** its Order transferring the Transferred Cases. (Doc. # 21). Plaintiff is certainly free to request of the transferor courts that the Transferred Cases be retransferred back to this Court.

### III. Motion for Clarification

In Kimball Midwest's Motion for Clarification (Doc. # 32), it requests clarification of this Court's Order transferring the Transferred Cases (Doc. # 23). Because the Court has vacated the Order transferring the Transferred Cases, Kimball Midwest's motion has been rendered moot and the Court therefore **DENIES** that motion. (Doc. # 32.)

### IV. Kimball Midwest's Motion for a Hearing on Zep's Motion for Sanctions

Kimball Midwest requests oral argument on the Motion for Sanctions by Zep. The Court concludes that oral argument is not "deemed to be essential to the fair resolution" of the sanction issues before it. *See* S.D. Ohio Civ. R. 7.1(b)(2). Consequently, the Court **DENIES** Kimball Midwest's Motion for Hearing on Zep's Motion for Sanctions. (Doc. # 61.)

## V.  Conclusion

For the reasons set forth above, the Court **DENIES** Kimball Midwest's Motion for Clarification (Doc. # 32), **DENIES** the Motion for Sanctions by Zep (Doc. # 45), and **DENIES** Kimball Midwest's Motion for a Hearing on Zep's Motion for Sanctions (Doc. # 61).  Further, the Court **VACATES** its Order transferring the Transferred Cases.  (Doc. # 21).

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE